Our second case this morning is S. L. M. v. Dorel Juvenile Group. Mr. O'Keefe, pleased to hear from you, sir. Thank you, Your Honor. May it please the Court, my name is J. O'Keefe, and I represent the plaintiff appellant in this products liability case. A little girl who suffered a serious brain injury while riding in one of Dorel's child safety seats, the high-back booster. She sued Dorel, and at trial, the plaintiff put on what the district court called an abundance of evidence that the product was defective, and ample evidence that the defect had caused her injuries. Both the district court and the defendant itself agreed that this was a close case, and that the child's condition was heart-rending. And it's precisely because the issues in the case were so close, and because the stakes were so high, that it was crucially important to instruct the jury properly. The district court made two critical errors in this regard. First, it allowed the jury to hear evidence that the defendant had complied with a federal regulation that set minimum standards for performance in fundal impact collisions, even though this was a rear impact crash. Once it let the jury hear that information, the district court refused to instruct the jury that compliance with that standard couldn't exempt a defendant from liability. Well, but it did tell the jury that they weren't bound by the regulation, and it was up to them to decide the question of defect and causation if they got there, right? It did say that, Your Honor, but the problem is that Congress itself had recognized, when passing the Motor Vehicle Safety Act, under which these regulations were promulgated, that it wanted to protect a realm of state sovereignty in this area. It didn't want to create a defense to products' liability actions, and it put an affirmative statement in the statute saying that compliance with these regulations shall not exempt a defendant from liability. Isn't that essentially what the court told the jury? Maybe not in so many words, maybe not in the words that you would have liked to have been submitted as part of the instruction, but that was the gist of what the court told the jury. It wasn't, Your Honor, because what Congress did was give an affirmative directive that compliance with this minimum regulation doesn't settle the question of liability at common law, and what the district court gave the jury was kind of a vague suggestion of choice, that it could consider this among other things. But Congress was very clear that in considering whether a product's defective under state common law, compliance with the minimum federal regulation isn't the end of the story. Well, I guess the problem from the district court's perspective is that that might suggest that the regulation had no relevance at all, and I know you disagree as to whether the regulation should have been part of the case at all, but once that evidence came in, I think the district court's perspective was that that language simply would have skewed too much to the other side. Well, Your Honor, a couple points in response to that. First, we did suggest two alternative jury instructions that could have been read in conjunction with the court's instruction 16A, which you referenced. Those were instructions 27 and 28. They're pages 1248 and 1249 of the joint appendix. One said, pretty much tracking the statute, that compliance won't be a defense to a common law action, and the other said that compliance with the minimum federal testing standard isn't proof that the federal government has certified this is safe. Now, the district court had its concerns about the wording of those two jury instructions. I don't think its concerns were well placed, one, because the wording that it singled out, shall be no defense, comes straight from the legislative history of that provision. It's what Congress intended. But even setting that aside, the district court had an affirmative obligation to instruct the jury correctly and completely on the law. And if it had concerns about the wording of these two proposed jury instructions, it could have tweaked the wording accordingly. But it didn't. It just left that issue completely out of the case. And third, our proposed jury instructions were going to be read in the context of the jury charge as a whole. So the judge was going to tell the jury in instruction 16A, the language that you referenced, that the jury could consider these standards among other evidence. And then it could give the jury our proposed additional clarifying instructions, which would tell them more precisely what legal weight that compliance had. The problem here, Your Honor, and where the prejudice really comes in. Well, you said what legal weight. The weight ultimately was for the jury to decide, right? It was, except the jury had a right to know that mere compliance with these standards wasn't all that the defendant had to show. And that's really where the prejudice in the case comes in, right? Because we disagree with the defendant about whether the standards should come in in the first place. You know, we said our first line of defense was irrelevant and unfairly prejudicial. Assuming they come in, they have to be treated very carefully, particularly given how close the issues in the case are. So the district court lets the standards come in. And he instructs the jury at the close of the evidence that a product under Virginia law is defective if it's unreasonably dangerous. And that's indisputably correct. The trouble is that in putting on its evidence of the safety standards, the defendant also presented evidence that compliance with these standards protects the public from unreasonable risk of death or injury. And it also put on ample evidence that the defendant complied with the standards. And it even went so far as to show the jury a report with a blue ribbon on it that it said was a NHTSA-certified copy of a NHTSA report showing that the highback booster complied with the testing. And that allowed the defendant to set up an argument in closing, which was essentially that the judge is going to tell you that a product is defective if it's unreasonably dangerous. A product that complies with this standard protects against unreasonable risk, which is not correct. That language comes from something that's not even in the standard, and we get into that on brief. But they say that a product that complies with the standard protects against unreasonable risk. The government has certified that this product complies with the standard. Therefore, the government has certified that this product protects against unreasonable risk. To counter that argument, we have to tell the jury that, no, no, as a matter of law, Congress has said that just compliance with this standard isn't good enough. But we couldn't make that argument without a jury instruction because it's a legal argument. If we stand up and tell that to the jury, the defendant just has to stand up and say, ladies and gentlemen of the jury, the judge, not the plaintiff, is going to instruct you on the law of the case, and the plaintiff just made a closing argument that was totally premised on a legal principle the judge isn't going to tell you anything about. That would have cost us standing and credibility in front of the jury. And so the overall effect of the district court's decisions on that point, between admitting the evidence in the first place, even though it requires testing in front impact collisions, and this is a rear impact case, in not considering the enormous prejudice in letting the jury hear evidence that was purportedly evidence that the federal government itself had certified this product as safe, and then finally in not... Let me ask you, the district court relied on the Lemons case for the proposition generally that evidence is relevant whether or not it addresses a specific defect. Herein you have the front versus the rear in collision report. How do you view the district court's treatment of the Lemons case for that proposition? I disagree, Your Honor, with the district court's treatment of that case. As a matter of black letter law, and this is in the restatement section that we cite in our brief, compliance with an applicable regulation is relevant in assessing whether a product is defective with the danger sought to be addressed by that regulation. So if a regulation mandates performance in front impact collisions, then compliance with that regulation is relevant in assessing whether a product is defective with regard to front impact collisions. This thing was only tested for front impact collisions? Essentially, yes, Your Honor. After it was sold, it was tested in side impact collisions as well, and in the context of this case it was tested in rear impact collisions, but before it was put on the market, yes, only in front impact collisions. I thought the jury had the broader obligation to decide whether or not the product was unreasonably dangerous for the use to which it would ordinarily be put. Isn't that what they were tasked? That is what they were tasked, Your Honor. Why isn't the regulation relevant as to that broader issue, even if it's not as narrowly focused as you might like it to be? Because the regulation is promulgated by an agency that has a whole set of concerns that are not the concerns that a reasonable consumer is going to have. They have budgetary concerns, they have political concerns, they have a complex regulatory relationship with the industries that they govern. So there's all sorts of reasons why something might not appear in a standard that has nothing to do with whether or not compliance with that standard makes the product unreasonably dangerous under state law. Yeah, and I guess that gets back to the issue of whether the jury instruction was correct, because the question is whether the regulation has relevance, and relevance is a fairly minimal standard. It's not a very high burden. Any evidence that goes to the issue in question. And so with that broader task, even if the regulation, as you point out, really wasn't focused on the kind of impact that occurred in this case, I mean, how can we say that the judge abused his discretion in allowing that evidence to come in? Well, two points, Your Honor. First of all, our objection at the threshold wasn't just irrelevance, it was also the 403 objection, that it would be unfairly prejudicial. And this evidence can be so persuasive to a jury because it can so easily be spun as saying that the United States government, in all its wisdom, with all its expertise, has said that this product is safe because it meets this test. And the trouble with that is that the government's regulating the whole industry, and it's not considering whether or not this particular car seat is safe in this particular type of crash. And the fact that it complied with the minimum federal baseline to be sold isn't relevant because every car seat on the market complies with that minimum baseline. I mean, it's relevant in the way that compliance with the law of gravity is relevant. They wouldn't be sold if they hadn't complied with it, correct? Right, Your Honor. Were you able to show that it had only been tested for front impact? I believe we were, but I'd have to confirm with trial counsel, but I'm almost positive. Wasn't there also evidence, though, that the regulation, even though it was limited to the front impact collisions, was also indicative of performance with respect to the type of impact that occurred here? There is, Your Honor, but there is a problem with that evidence, and that is that that evidence came in through two defense witnesses who were unaffiliated with NHTSA, and they appeared to be referring to a report that NHTSA made to Congress. That report appears in the joint appendix, and it's not quite as sweeping as they say. What it indicates is that... Were they presented as experts? One of them was. He was Van Arsdale, the defense defect expert. The other one I don't believe was presented as an expert. He was Emerson. He was the defendant's head of regulatory compliance. But one of them certainly was an expert, Your Honor. But the report they referred to, Congress had passed an act telling NHTSA to look at improving head protection in side and rear impact collisions, and the report said that after some testing and given the time frame imposed by Congress, we're not in a position to adopt those standards now, and it ran a series of three rear impact tests on a rear-facing car seat. This was a front-facing car seat. It decided that it met those three tests, so it wasn't going to pursue rear impact standards for a rear impact car seat at that time. Now, this was a booster seat, right? Yes, Your Honor. It was a booster seat with a back behind it, so it wasn't just the flat back. It wasn't just the bottom part. No, sir. It was the whole high-back set. I did want to move on to my second point, which is that the district court's instruction 16 had no foundation in the facts of the case. That instruction, which appears at page 1659 of the joint appendix, says that a product is not required to have all possible safety features and that a manufacturer is not responsible for a consumer's decision to buy a product that reasonably omits a safety feature. The problem with that instruction, the primary problem, is that this wasn't a consumer choice case. That instruction is based on a line of cases where a sophisticated consumer affirmatively elects not to include a safety feature in a product. This isn't a case where a product was built to a consumer's specifications or even where a consumer deleted an otherwise available safety feature. It's undisputed that the decision not to add wide-hatted side wings to the high-back booster was the manufacturer's decision. The plaintiff's mother just purchased the product. She didn't play any role in designing it, and she bought it retail at a big-box store. Instruction 16 isn't a model jury instruction, and neither this court nor the Supreme Court of Virginia has ever approved its use in a case like this. To be frank, it sounds more like an argument rather than an instruction. I'm troubled by it, but I guess the question is whether or not this states the law, and I'm not sure that it does. Well, it does in this case for a couple reasons. First, it distracts the jury from the crucial inquiry in the case, which is whether this product on its own is unreasonably dangerous. Instruction 16A says that the mother's decision not to purchase the high-back booster somehow overrode the manufacturer's decision not to include the safety feature. Well, it only matters if it was reasonable for the manufacturer to do so, and isn't that ultimately a question of defect? That is ultimately a question of defect, but there's a couple problems with the way the instruction's framed. First, the defendant couldn't get into any of the reasons why it didn't add the safety feature. So to that extent, there's no evidence to support a jury finding that, as to negligence, it had behaved reasonably because, based on the evidentiary sanction, it couldn't say why it hadn't included the safety feature. Second, the primary evidence at trial over whether that was reasonable was, of course, the safety standard that we've been talking about. So the reasonableness doesn't do all the work there for those two reasons, and for a third reason that, as the instruction's phrased and as you picked up on, it's basically an argument, and it, in fact, suggests that the product reasonably omitted a safety feature when, in fact, that was the central inquiry in the entire case. There's another problem with giving this instruction in the retail context, and that is that when a consumer, like the plaintiff's mother, walks into a store and selects a product in a box, there's almost always going to be another product with more safety features there. And so, you know, it's undisputed, and we, in fact, tendered a jury instruction saying this, that a product is not required to have all possible safety features. But what this instruction does is kind of flip that legal principle on its head and put the burden on the consumer to justify ever buying a product that doesn't have every available safety feature, because the manufacturer can just say, well, wait a minute, there's a safer product out there. You could have bought it. You didn't, so tell us why that's, you know, why we should possibly be liable. And for those reasons, Your Honors, and the reasons we explained in our brief, we'd ask the court to reverse the district court's judgment and remand the case for further proceedings. Back up, if you will, back to the issue dealing with the court's instruction regarding the case I pointed to, the lemons case. If we were to find that that instruction does not exactly fit within the lemons definition, that is, that it does not in and of itself say that evidence is relevant whether or not that defect is specific to it, how do you argue at least to the proposition that it is nonetheless harmless error? It's not harmless error because compliance with the federal standard was the centerpiece of the defendant's defense on the issue of defect. It repeatedly emphasized that it had complied with the standard. It put on several witnesses to testify at length about what the standard meant, even though they weren't affiliated with the agency. There was no question at trial that it complied with the standard by a comfortable margin, but that point was emphasized over and over and over again. The defense mentioned NHTSA, the agency, 15 times in their closing argument. That is the primary reason they told the jury this product was not defective. Let me ask you one other question. This was the only reason given by the district court for allowing this evidence in or this instruction, and yet, as Judge Diaz has pointed out, there was this additional information presented by the other side on the 2004 congressional report that might be interpreted to indicate there is relevancy on this instruction 213. How do we treat that 2000 report in the light of the district court's specific indication that it relied on this? Are we allowed, as the appellate court, to say, well, even though it does not fit within the district court's specific rationale given, it nonetheless would be relevant under that report in light of that report? In all candor, Your Honor, you can affirm for any reason appearing in the record, and that report does appear in the record. So if that's the conclusion you reached, you could affirm on that basis. I don't think you would if you would take it. I want to get that across because I want to understand your position on it. So you would have no objection to the court reaching beyond the stated rationale of the court and saying, in fact, there is relevancy that we can glean from the inclusion of the 2004 report as it does indicate there is something here that might be relevant that can be introduced in 213? If the court can look to the 2004 report and come to that conclusion, then yes, we'd have no objection to that, Your Honor. Thank you. Thank you, Mr. O'Keefe. Mr. Judge. Good morning, Your Honors. And may it please the court. My name is Jonathan Judge, and I am representing the defendant, Apolli in this matter, Durrell, Juvenile Group. At trial, plaintiff contended that Durrell's high-back booster child car seat was defective and responsible for her injuries. After hearing the evidence, 12 impartial jurors unanimously rejected plaintiff's claims. After reviewing the evidence, the district court found that the jury's verdict was supported by ample evidence in the record. We have at least the issue here dealing with these instructions, and the first issue that seems to pop out, at least from my perspective, deals with the judge's instruction on the standard 213, which I think is probably understood as not directly insofar as being specific to this type of injury because it reverses the front considerations in the report. But the question is, is that report relevant for this type of collision? And the trial judge in instructing, it appears to me, he cited the Lemons case, but you can look at the Lemons case, you won't find this in there at all from what I can see, and that is that the proposition that these applicable safety standards will be allowed whether or not they are specific. I think we've got to find it somewhere other than the Lemons to get there. But be that as it may, the other side has said that we're not limited to that specific reason, that we can now look at the 2004 report. So from my perspective, I can turn my eyes from this over to the 2004 report that was included, and if you will address as to how that makes it relevant, even if there is an error on the part of the judge in this specific reason, it seems to me the other side has said that 2004 report could be used as a base to say there is relevance. Absolutely. If we accept it. Absolutely, Your Honor, and that is one reason. I can give you three other ones in the record. I want to hear the one on the 2004 report. Sure. The 2004 report, the NHTSA considered adding a rear impact test requirement to the safety standard. NHTSA decided there would not be a safety benefit to doing so. In a product liability case that is challenging the safety of a design, the fact that the safety standard does not cover or does not require something that the plaintiff says is necessary because it has found that it would not offer a safety benefit is a relevant fact. And I also would, I'm concerned about the larger argument that somehow if the standard does not address every particular of the plaintiff's accident, it's not relevant. There is no standard anywhere that addresses the particulars of one individual accident. The point of offering the standard is to show this is what is reasonably accepted in the field. The fact that it doesn't require something the plaintiff says is necessary is evidence that the plaintiff's theory lacks merit. That was the Taylor case from the Virginia Supreme Court which said, you know what? Plaintiff says this hook should be different. If there is this relevancy that derives from this report, as I'm looking here, it seems the report is essentially saying that tests by the agency of rear-facing child safety seat satisfies standard 213 because they perform well in rear impact crashes. If we reach there, we still have the 403 unduly prejudicial part to this. So how do we deal? We say it's relevant, but why is that? Once you get to this, because you're not dealing with something that deals with the specific type injury, it's not dealing with the front-end type, you now allowed it as relevant evidence here because it's shown that, well, there may be some connection here. That's relevant. You're right. It comes in at that point. But the impact of a federal regulation when it is put up or a standard is put before a jury is essentially saying if you comply with this standard, there's not much chance the plaintiff can win on this from the presumptive perspective or from the perspective that the regulation is being introduced as something the government requires for the manufacturer to do, and they show we've done everything that the government requires. And that in and of itself, because this is not specific, the question is, does that become unduly prejudicial when it's dealing with a nonspecific type impact? Your Honor, it does not. And I think I can go directly to the question and answer and say that here's the problem. The truth is very prejudicial sometimes. That does not mean that the truth is unfairly prejudicial. The fact that the federal government in defining safety of car seats and the state of Virginia in defining safety under its product liability regime have a similar view, let's focus on what's reasonably safe, is not unfairly prejudicial. It underscores why the federal government's view on reasonable safety happens to be relevant in a Virginia case. Now, plaintiffs cite cases from other jurisdictions where they say we don't want to hear about what the government has to say. Well, that's not the way that it's viewed in Virginia. This is a negligence-based product liability system. And I disagree with the assertion of the plaintiff that we don't have the right to come up and say we complied with the standard, that's enough. We do. In a negligence case, the defendant has the right to say we discharged our duty of care by doing everything that the government asked us to do. That is what a negligence defendant is allowed to do. Plaintiff argued and used NHTSA documents herself to argue that we should have gone beyond that, that we had a duty to do more and go beyond the standard. And the defendant argued, no, we do not. And, by the way, we did anyway. And I want to make sure I understand this because this is critical to my understanding. Sure. So once we get to this unduly prejudicial part, we give deference to the trial court, but our review is a de novo review in terms of the balancing of it, the prejudicial effect versus the benefit of it. And then the plaintiff then cites two cases in which the courts have said, well, it wasn't an abuse of discretion to exclude it. In those cases, you're probably familiar with those two. Quite. And how does that impact and deal with us even though it's not dealing with the inclusion, it's the exclusion? It's not an abuse for the trial court not to bring this in because it's not relevant, I guess, is what they're saying. Well, I think there are two reasons why. The cases that plaintiff cites were cases in which the appellate court said, we're going to affirm the district court's exercise of discretion not to allow it in. But in this case, that same principle would have the appellate court deferring to the district court's decision, presumptively, to let it in. So that's one reason. The second reason is, as we've described, those cases, the Malcolm case supports our position because they said if you have a negligence-based product liability system, safety standards come in. They are admissible. Even though that was a side impact case, and they said even if it's a frontal standard, it still comes in. That's what Malcolm held. And remember, in the OOKSA case, it's important because this is where I want to get back to all the reasons why it was relevant that haven't been discussed yet. I want to make sure we underscore those. Remember, the alternative designs that contain these special features, plaintiffs said you had to have, performed worse under this frontal safety standard testing. They would make car seats less safe in frontal collisions. You can't pick your crash, okay? And if all you're doing, according to the Restatement Third of Torts, which they cite, is trading one risk for another, that tends to show that you are not, in fact, making a product more safe, and that the original product is not defective. Why do you need the regulation to make that point? For the same reason that the plaintiff would cite... For the same reason that we have experts or that we cite literature or anything else. It's a source of expert opinion on the issue. And the fact that it's an unbiased source, that it's independent, and the fact that all car seats have to comply with this standard. So why would the jury not be entitled to know? Take it or leave it, jury. You can accept it. You can reject it entirely. But just so you know, this is what the government thinks is reasonably safe. And by the way, the reason they don't have a side impact test and they don't have a rear impact test is because it's not scientifically justified. Well, I'm not disputing that argument, that in the abstract the regulation may be relevant on the broader question of defect and reasonableness of design. I was just wondering why a comparative analysis of two different designs requires a regulation to make that point. I don't think it does. I don't know if it requires the regulation, but the testing at issue is specified by the regulation. So you can't talk about the testing that was done, the frontal testing, that shows that the two designs performed differently without explaining where that testing came from. Let me ask you this. I mean, you make a compelling argument that the regulation may be relevant, but the regulation also has some warning signs regarding what Congress thought with respect to how the regulation and its contents should be used. Yes, Your Honor. So why not allow the jury to hear that as well? Because that's not what Congress is actually saying. The statute that plaintiff keeps referencing is a preemption statute. It talks about being exempt from any sort of state product liability law. Durrell was not claiming it was exempt from Virginia product liability law. It was claiming it complied with Virginia product liability law, and the federal standard and its compliance with it was evidence of that compliance. That is why. And the Schultz case we cited in our brief, to which there has been no response to that I recall, specifically addresses why this is a preemption statute. It is not an argument that you can never mention safety standards. And if you look at the Restatement Court of Torts, if you look at other cases that are discussing safety standards around the country, these are routinely admitted as one source of evidence in these cases. There is no prohibition on introducing it, and you don't instruct the jury, by the way, this cannot be used as a defense, or that this does not allow them to be exempt from it, which the jury, not being lawyers, first of all, they don't understand what common law is. They don't understand these things, and that the jury would be confused into thinking, oh, so this doesn't apply at all. And that is not the law, and that is the district judge's call in the first instance, and the district judge... Let me make a comment to that. We talked about the 403 unduly prejudicial aspect of it, that if there is relevancy under this 2004 report, and then in looking at the unduly prejudicial part of it, as you say, we ought to give deference to the trial court, in the same way as the two cases pointed to by the plaintiff, but the trial court didn't rely on that rationale. The trial court rationale didn't mention this 2004 report. He relied upon the Lemons case and an earlier case from this court that seems to me to kind of not be in line with really what the law is. And so to that extent that are we to... We ought to give deference to a trial court for a rationale that it did not use. I think we agree the 2004 report is not something the trial court at least articulates it was something it relied upon. Your Honor, I'm inclined to disagree. If we look at the... I seem to recall that, in fact, the trial court did rely on it. Well, I'm double-checking the issue in the order on new trial, docket 340. I'm looking at JA page 362. And I'm looking at when the court revisited the issue after the trial and said, no, this evidence was properly admitted. I'm not relying on the Lemons case, Your Honor. I think that the reasons why we explained why it was relevant were discussed anew in the order denying the motion for new trial. And I understand that, but I'm looking at, in terms of the court's instruction, the jury heard and what it relied upon at that point in time. And my question goes to, do we give the trial court deference based on something it didn't even consider or articulate in its instruction to the jury and then later on comes up with? I mean, deference seems to be a whole different... It doesn't mean the end of the question. It then puts it to us to weigh this de novo either way, which may still come out in your favor. But the deference thing troubles me because trial court, I don't mind giving them a deference, but not to something he didn't even think of or didn't write about. The answer, Your Honor, is that you do give the court deference because if the court would have simply, without explanation, ruled, I think this evidence is relevant, period. Sure, but he didn't do that. He gave a specific reason. He gave a reason. He didn't necessarily list all of his reasons. He had to rule upon 30 or 40 motions in limine, Your Honor. It looked like he would have picked the one that might have been the one that might give him that level of relevance and not a case that says not one word about what he says it says. Well, but the decision was... I'm just dealing with deference on it. I don't mind giving deference, but I want to give deference based on something he does, not something he wished he had done or he should have done. And if you don't get the deference, as I say, it doesn't mean that's the end of it, but it does mean that we get the appellate court then to conduct our own review of it from a de novo perspective. Your Honor, you do not. It is a deferential review regardless. The only question is whether you can work directly... He gave deference to what he said later. That's what you're saying. I think it's just deference to the fact of the evidence being allowed, and then under United States v. Cole, you maximize all the probative value that you can find for the decision and you minimize all the possible prejudice that can result. What were you relying on in the district court's post-trial order? We were relying upon... Because you had it out there, you were going to... I think in the post-trial order, he said... He was just relying on the fact that under Virginia law, standards are relevant. I don't know if he provided... He said it has to be relevant because it involves a product liability case and standards are relevant. I don't recall the exact citation he gave. It's actually called an opinion in order, but I just wondered what... It's very long. I just wondered where you were on that. It was very long, Your Honor, and I don't have it offhand. You don't have the page number? I do. 1870. And it does not provide a citation, but he explains... 1870. Page 26 of the order. Correct, Your Honor. And he provides his reasoning. He does not cite a case, but he provides his reasoning as to why that is. Your Honor, I would like to move on to one other issue, which is... The larger issue is, is this even relevant? Would the jury have reached a different decision if federal standards evidence had not been admitted? And I respectfully submit to you they would have reached the same decision. You mean, is it harmless error? Correct. I'd like to address that because this court's precedents say as follows. The court looks to the presence of alternative theories that could have also supported the jury's verdict. That's the Anderson v. Winesweek case, which we did not cite in our briefs. I apologize. And the Taylor v. Virginia Union case. If there are alternative theories by which the jury could have reached the same conclusion, the court tends to find that admission of the evidence, whether fair or not, would not have actually affected the verdict. And the district court specifically looked at this. In the post-trial briefing, plaintiffs said to the district court the same argument they just made to you. They basically did nothing except rely on the federal standard. And Judge Jones vehemently rejected that argument. He said that grossly mischaracterizes the record at this trial. He said that there was an abundance of evidence independent of federal standards from which this court, sorry, from which the jury could have found for Durrell. And that's page 20 of his post-trial order, docket 340. Three alternative bases in particular, which Durrell also relied upon. Number one, testing showing that the features plaintiffs wanted, side wings and padding, make no difference at this severity. Mr. Emerson talked about his testing. Dr. Van Arsdell talked about his articles. The second reason, Durrell argued that because it conducted 1,700 tests, it was not negligent. Even if people disagree about the design of the car seat, Durrell was not negligent. And that's the key question for the jury. Was Durrell negligent? Did it use ordinary care? And third, Durrell argued that to accept plaintiffs' argument would mean that tens of millions of booster seats that have been used in this country for 10 to 15 years without backs, without side wings, without fancy padding, have been defective all this time and somehow no one ever knew. Those were tough arguments that the plaintiffs had to go up against, and respectfully, these fundamental failures of plaintiffs' proof did just as much, if not more, damage to her case than an abstract dispute over federal standards. This court cannot say at the end of the day that the jury was substantially influenced by federal standards evidence. I would also like to conclude on the jury instruction issue. Basically, the problem that the plaintiff has here is again the standard of review. She has a very heavy burden to show that the instructions were wrong and that they seriously prejudiced her. The district court's instructions were either Virginia pattern instructions or reasonable applications of existing precedents. If you had all this other evidence that is so conclusive to the point you say we can't even say that it affected, why did you introduce it? Because I'm a defendant, Your Honor, facing a... But you didn't need it. It's so conclusive. There's no way in the world it could come out any other way. I didn't... But you bring in federal standards that are not directly applicable. They apply in a different context, and the question then becomes, are they relevant? And it appears to me, from the conception, maybe they are. But then this 2004 report comes out and maybe adds some measure of relevancy. And we slide into the unduly prejudicial aspect of it, and the question then comes back to where you are in terms of these alternative theories for harmless error as, you know, was it so prejudicial that it influenced the jury? And then we are asked to now, as an appellate court, step in the shoes of these impartial jurors and say, what is it that you hung your hat on here when you heard that these federal regulations had been complied with and they'd done everything with them in light of these other things that went on? And you're saying we cannot say those federal regulations prejudiced the jury? Surely we can, you mean we should not. You should not. And the reason is, that's why I cited to you the two precedents that we did. We can't climb into their minds, and I think, frankly, we're somewhat forbidden from doing that. So what we do is, what the court asks itself, and what it asked itself in the Anderson case and the Taylor case was, were there other ways for the jury to get to the same place? And if there are two or three other ways to get there, and if one of them in particular we find compelling, then we cannot conclude that, more likely than not, that the jury's verdict was substantially influenced by the challenged evidence. May I ask about this consumer choice instruction? You mentioned there were two sets of instructions. One set were patterned jury instructions, and the others were instructions garnered from the case law. I gather this was a case law? Yes, Your Honor. Do you have any authority that sanctions the use of that instruction in a consumer defect case? I don't have language that uses that specific language as a jury instruction. I will say that it is fully supported by the Fourth Circuit's decisions in the Austin case and in the Western District's decision in the Butler case. I asked, or I commented to your colleague that this sounded more like an argument rather than an instruction. What do you say about that? I just don't get how that instruction helped the jury. The instruction helped the jury because the jury was told that the defendant has a duty of care, and what this instruction did was it bound the duty of care. It said the defendant's duty of care is not to create a perfect product. The defendant's duty of care... I guess it goes to this, Your Honor. Consumer choice was our defense at trial. Our defense at trial was, these additional features, they don't make any difference. They really don't. People show up, they want to pay an extra $100 for these features, God bless them, we are happy to sell this product to them. But consumer choice or not, if the product was unreasonably defective, you lose. Correct, and that's why I made sure that that instruction said, provided that all of the choices offered by the manufacturer are reasonable, because I didn't want to have to face that issue on appeal. I guess my concern is that this seemed to be directed at the plaintiff's mother in this case. Not at all, Your Honor. That is a straw man set up by the plaintiffs. It does not mention her. It does not talk about her decision. And remember, Durrell is not a retailer. Durrell does not control and is not responsible for what Walmart keeps in stock or Kmart keeps in stock or anyone else. This is directed at a manufacturer's decision under the Dreisenstock case to offer both the Cadillac and the Chevrolet. They will have different features as long as both are reasonably safe, the manufacturer has the right to offer both. And the fact that the consumer chooses the Chevrolet over the Cadillac, even though the Cadillac has 20 airbags and the Chevrolet has eight, as long as they both are reasonably safe, that does not mean that there's anything wrong with the manufacturer's decision. Could it have been worded in different ways? Sure, it always can. But the district court had the discretion to word that instruction the way that it did. Let me go back to your harmless error argument again. Judge, Jones said that there was ample evidence to support the verdict in any event. What's our standard of review for that? The standard of review is... That's on page 20 that you cited of his post-trial opinion. Correct, and that is the two cases that I gave you earlier. Neither party put them in their briefs, which was an oversight. What's the standard of review? Is it de novo or discretion? Do we give any deference to it? The standard of review is very curious. The standard of review I would describe as curious. As curious? As curious. Here is what the court has said twice. The court has said this twice. We look at... You're talking about this court? Yes, this court. This court said this twice. The court said we look to, not they have a burden, we have a burden. We look to the presence of alternative theories or methods or arguments that were raised that could also have supported the jury's verdict. As I read those cases, if there are these alternative theories there, we tend to conclude that the challenged evidence was not a substantial factor. I read it five times, and that's what it says to me. So your answer is you don't know. My answer is what I just said, that the challenged evidence is... We normally review something de novo or clearly erroneous. Not curiously. Or just abuse of discretion. Yes. Something like that. Why is that curious when it would be, in the first instance, the court would first determine that there was an abuse of discretion. And there having been abuse of discretion, the court then weighs de novo the determination of whether this is prejudicial or not. And by doing so, it looks to see if there are alternative theories, and it determines that, based upon what's present here, there is not prejudice or there is prejudice. I'm not getting with the curious part of it. It seems pretty clear to me that in those cases, the error was presented and therefore indicates abuse of discretion. And then having looked to see if there's abuse of discretion, we then look at it and see, well, we do the balancing test. Actually, Your Honor, that's not what happened in at least one of these cases. The court said this was allowed in... Oh, boy. The one that brought up is page 20. I mean, you said that he said, even if it's error, it's harmless. Right. So he said it was harmless. No, Your Honor. If it was error. He did not. Well, that's what you said. No, I said that he addressed the issue of plaintiff's claim that only federal standards was relied upon for the defense. That's what was discussed in the post-trial briefing. He addressed that up front as part of his factual discussion of what occurred at the trial. He did not address the harmless error. He thought, Your Honor, thought that... And there's nothing to defer to. You're saying it wasn't a harmless error analysis. He didn't make one, so... He did not. So we definitely review... We view it... If there's error, we view it de novo. Yes. We have to decide whether it's harmless or not. The error is reviewed... Now we got that settled. ...deferentially, whether it's harmless. Judge Wynn is right on the money. It's de novo. Actually, Judge Wynn was wrong about one thing. I'm sorry. The... Actually, in those cases, they did not decide first that the evidence was wrongly admitted. I'm really addressing the case we have here. Right. And what we're dealing with here, where the trial court does not do it, it seems clear to me that if we're going to look at a 403 analysis, it has to be de novo. There's nothing to defer to. Nothing to defer to. Within the confines of United States v. Cole, I would agree with that. It's de novo, but it is done minimizing any potential prejudicial value against... while maximizing the potential probative value of the evidence. To do it is one thing, but the standard is nonetheless the same. It's a de novo review. It's not a deferential one to something that doesn't exist. I'm afraid we disagree on that, Your Honor. And there's an old principle, though, that we used to argue a lot when I represented the government, that if you get a verdict in favor of the government, if you get a verdict in favor of anybody, you always look at the whole thing in the light most favorable to the verdict. That's true. So you have to take this de novo analysis in that light? You certainly do. This jury worked hard for two weeks, and they unanimously found the plaintiffs could not even prove the first element of their claims. That's what they found, and that deserves great respect and deference from this court. Thank you. Thank you very much, sir. Mr. O'Keefe? You don't necessarily agree with all that. No, surprisingly, Your Honor, I don't. And I wanted to start with the 2004 report that Judge Wynn had a few questions about. I've read the report, and I don't see where it says that there's no safety benefit or that rear-impact testing wouldn't be scientifically justified. The report's at page 267 of the joint appendix. And I think it just says that under the time frame that they're operating in, and based on the limited testing that they've done, that they chose not to adopt rear-impact testing at that time. But I don't think it goes quite as far or does the work the defendants would like it to do. Again, we're comfortable with the court reviewing that for purposes of the relevancy analysis, and we're confident that they'll come to the same conclusion that we did. Second, on to the preemption point, whether or not the statute, when it says that compliance with this regulation shall not exempt a defendant from liability, there's no question that that does serve to bar a preemption argument, but it's not limited to that context. The legislative history says, and I'm quoting from the House report that we cited, which is House Report 1776 at page 24, it's intended that this subsection specifically establishes that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those relating to warranty, contract, and tort liability. And the jury was entitled to know that. They were entitled to know that mere compliance is not enough. Again, the defendant made that argument up here. They said, under Virginia law, mere compliance is enough, and we could just say that we complied with the safety standard. We're not saying that's what they did in this case, but they said that would be good here, and that's not correct. Well, in response, Mr. Judge says, but if the jury had been told that, they would have been confused. So then why is this evidence being introduced if it's no defense? But, Your Honor, we can craft jury instructions that let them know that. We have the judge's jury instruction, 16A, that says this is something you can consider along with everything else, and then we had the instructions that we tendered that were aimed at saying, but this does not per se absolve the defendant of liability. And however you want to phrase it, the jury has to be given that instruction, that this is something you consider, but it's not the only thing that you consider, because otherwise it's too easy for them to come to the conclusion that they apparently did, which is something that the federal government says is safe, is safe, and who are we to disagree? And that isn't the analysis under Virginia law. Third, on the harmless error point, I'm afraid I'm not prepared to respond to those two cases. This is the first I heard of them today. What two cases? The two cases, Anderson and Taylor, that established the curious standard to review. But as to the other evidence, you know, we acknowledge, and it's clear in the record that there is some other evidence that the defendant could rely on for defect, but if we're going to talk about the numerous tests that they were on, well, those are numerous tests they were on to ensure compliance with the regulation. If we're going to talk about their expert testimony, well, yeah, they had an expert, and most of what he said had to do with Standard 213. That's not all of what he said, and he has published articles about Standard 213, but this was the centerpiece of their defense. That's why it kept coming up in closing, and that's why it was so harmful to us. On the jury instruction, if the court was at all concerned about the prejudice that flowed from that jury instruction, I think the defendant alleviated its concern when it said that consumer choice was the theme of its defense. You know, that's why that instruction hurt us so much, and it is argumentative. It's not a model jury instruction, and it simply injects an inquiry that has no business in this case into the jury's deliberation. This instruction would be appropriate in a case like Austin or a case like Butler, where a sophisticated consumer had a product built to her specifications or went in and filled out a purchase order and deleted available safety features. That's not what happened here. The plaintiff's mom bought the thing at a Walmart. It was in a box, and she took it as is. She played no role in designing the product. She played no role in deleting any available safety feature. And to the extent that the defendant understands our argument to be saying that every car has to be a Cadillac, no cars can be a Chevy, and we disagree with anybody's right to offer different trim levels and different price points, we offered that instruction. At page 1328 of the joint appendix, we offered the instruction that says a product doesn't need to have every available safety feature. We agree with that. What we disagree with is going further to try and somehow put the burden on the plaintiff's mom to justify the purchase of any product that's not the ultimate in safety. That's not the law in Virginia, and it was prejudicial error to tell the jury it was. For those reasons and the reasons previously stated, Your Honor, we ask the court to reverse the district court's judgment. Thank you very much, Mr. O'Keefe.
judges: Robert B. King, James A. Wynn, Jr., Albert Diaz